IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY L. LAWRENCE, #146-782       \*
        Plaintiff,

                      \*

    v.                  CIVIL ACTION NO. PJM-07-69
                      \*

FRANK SIZER et al.,
        Defendants.        \*

## MEMORANDUM OPINION

Now before the Court is a Motion to Dismiss or in the Alternative Motion for Summary Judgment filed on behalf of the State Defendants (Paper No. 17) and Plaintiff's opposition thereto. Paper No. 30.  Defendants rely on materials beyond the scope of the Complaint and their Motion shall be construed as a summary judgment motion pursuant to Fed. R. Civ. P. 56.  Additional nondispositive motions filed by Plaintiff also are presented for review.  A hearing is unnecessary. Upon review of the pleadings, exhibits, and applicable law, the Court finds that Defendants are entitled to summary judgment.

Plaintiff's nondispositive motions shall be denied.  His request for injunctive relief (Paper No. 9), filed April 18, 2007, requests immediate release from administrative segregation, placement in a single cell, and the guarantee that he will not be transferred to another prison in retaliation for bringing this lawsuit.[1]  The segregation assignment occurred at the time of his 2006 transfer from North Branch Correctional Institution ("NBCI") to another facility, and is not related to the allegations raised in the original Complaint.  Plaintiff has no constitutional right to placement in a

---

[1]The request also contains new allegations concerning his placement on administrative segregation after transfer from North Branch Correctional Institution ("NBCI") to Jessup Correctional Institution ("JCI," formerly known as the Maryland House of Correction Annex), the lack of privacy and recreation at JCI, the failure of JCI staff to provide hot meals or permit Plaintiff access to religious items such as a black foot and tobacco, and other complaints about conditions of confinement.  These allegations are not related to the claims made in the original Complaint and accordingly will be denied and dismissed without prejudice, subject to refiling as a new civil rights action alleging poor conditions of confinement at JCI.

single cell, *see Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981); *Nelson v. Collins*, 659 F.2d 420 (4th Cir. 1981) (en banc).  His claim that any future transfers will result from retaliation for filing the instant lawsuit are at best speculative, and cannot proceed here.  *See Hudspeth v. Figgins*, 584 F.2d 1345 (4th Cir. 1978); *McDonald v. Hall*, 610 F.2d 16 (1st Cir. 1979) (prisoner must show litigation activities were actual motivating factor for adverse action); *ACLU v. Wicomico County*, 999 F.2d 780 (4th Cir. 1993) (retaliation must have adverse impact on exercise of constitutional right).  Plaintiff's request for adjustment of his initial partial filing fee is denied, said fee having been determined under the statutory guidelines of the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b)(1).  Appointment of counsel is not warranted in this case under *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984).

1.      **Standard of Review**

Summary judgment is granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  This does not mean that any factual dispute will defeat the motion.   By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003).  The Court should "view the evidence in the light most favorable to....the

nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted.  *See Celotex*, 466 U.S. at 322.

## 2.    Allegations

The facts are not disputed.  On August 3, 2005, Plaintiff was transferred from the Maryland House of Correction Annex ("MHCX")[2] to the Maryland Correctional Adjustment Center ("MCAC").  One month later, on September 2, 2005, he was transferred to NBCI. In the instant action, he alleges he was transferred to MCAC without his personal property, complains of the conditions encountered at MCAC and NBCI, objects to a strip search that took place during transfer, and argues that as a maximum security prisoner he should not have been housed with medium security prisoners while at NBCI.  Plaintiff requests an award of money damages.

Plaintiff is not the first prisoner to complain about transfer from MHCX to MCAC.  As noted in previous litigation,[3] from February 7 to March 3, 2005, MHCX was locked down because of a series of stabbings. *See Marzano, et al. v. Commissioner*, Civil Action No. JFM-06-3308, Paper No.

---

[2]In July of 2006, MHCX was renamed the Jessup Correctional Institution ("JCI").  Plaintiff currently is housed at JCI.

[3]Consolidated cases concerning these transfers previously had been filed in the lead cases of *Johnson, et al. v. Commissioner,* Civil Action No. JFM-06-3287 (D. Md. 2006) and *Marzano, et al. v. Commissioner,* Civil Action No. JFM-06-3308 (D. Md. 2006).

23.  A prisoner was murdered on or about May 27, 2005, and the prison was again locked down until July 11, 2005.  *Id.*  Transfers involving more than sixty prisoners began roughly three weeks later, spurred by an increase in inmate violence.  *Id.*, Paper No. 23 at Ex. 1.  The project to quell the prison violence was called Operation North Star.  *Id*; *see also* this action, Paper No. 17, Exhibit 3 (exhibit under seal).  Those selected for transfer were identified through intelligence as having some connection to a gang, had a bad adjustment history, had possessed contraband, or had previously compromised security.  They were transferred in closely monitored groups.  *Id.*  Plaintiff was among those transferred to MCAC for 30 days or less prior to being transferred to NBCI.  Paper No. 17, Exhibit 1 at 2-3.

Plaintiff complains that while at MCAC he was locked down twenty-three hours a day in a small cell where lights were kept on, ate all meals in his cell, was not permitted to interact with others, was shackled when escorted for outside recreation, and had to share shower shoes with others, resulting in his contracting a foot fungus.  He also complains that his fan, radio, television, play station, word processor, coffee pot, chess set, legal work, religious material, personal hygiene material, shower shoes, address book, clothing, magazines and newspapers were not sent to him during the time he was held at MCAC.  Defendants do not deny that Plaintiff's property was not provided while he was at MCAC, but indicate that it was sent to his final transfer destination, NBCI, pursuant to directives in Project North Star.  Paper No. 14, Exhibit 3 at 4.

When Plaintiff was transferred to NBCI he was searched and the search was videotaped to determine the existence of pre-existing injury.  *Id.*, Exhibit 3, Declaration of K. Daniel Northcraft, Acting Assistant Warden.  Defendants assert, however, that inmates were not filmed in the nude; no personal body parts were videotaped and no body cavity searches were conducted.  *Id.*

3.      **Analysis**

Prisoners do not have a constitutional right to access programs or to demand to be housed in one prison versus another.  "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  A liberty interest may be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" without regard to mandatory language in prison regulations. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995).   Thus, any due process inquiry must focus on the nature of the deprivation alleged and not on the language of particular prison regulations.  *Id*. Following the reasoning of the Supreme Court in *Sandin*, a liberty interest is not implicated when prisoners are placed on administrative segregation. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996).   It is not "atypical" for inmates to be placed on administrative segregation for any number of reasons.  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  Plaintiff in the instant case has not alleged that the conditions of confinement at MCAC – which were imposed not for punishment and which were temporary pending a mass transfer of high security prisoners between prisons – were significantly more onerous than those which a maximum security prisoner would generally endure.  *See Beverati,* 120 F.3d at 504 (conditions of administrative segregation at Maryland Penitentiary); *Knox v. Lanham*, 895 F. Supp. 750, 758-59 (D. Md. 1995) (administrative segregation at Eastern Correctional Institution).  Any violations of Division of Correction directives in connection with this temporary placement at MCAC do not amount to a violation of a constitutionally protected right.

Plaintiff attempts to contrast the conditions of confinement at MCAC and NBCI with the conditions of his confinement at MHCX prior to his transfer.  Clearly, he enjoyed more recreation and out-of-cell time, access to programs, and access to property prior to transfer.  As noted by other prisoners in JFM-06-3308, *supra*., note 4, prior to transfer most MHCX general population prisoners were confined to their cells for 11 hours a day during the week and 7 hours on the weekends, were permitted to leave their cells without restraints, and their recreation times, which occurred three times a day, included time for educational programs, library, gym, religious services, showers and medical access.    While the limitation on movement and the curtailment of out-of-cell time was more restrictive as a result of the transfer, the conditions suffered by Plaintiff were not "atypical" for a maximum security prisoner confined within the Maryland Division of Correction.  Indeed, prior to the transfers MHCX was frequently on lock down status due to violent inmate attacks.  "Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  As evidenced by the absence of any injuries, the conditions described by Plaintiff do not begin to approach a standard of wanton and unnecessary infliction of pain. *See Strickler v. Waters*, 989 F. 2d 1375, 1381 (4th Cir. 1993) (absence of serious or significant injury establishes prisoner not subjected to cruel and unusual punishment).

Plaintiff further asserts that he should not have been placed at NBCI to serve time with medium security prisoners.  As noted by Defendants, Plaintiff was kept separated from lesser-security prisoners and clearly did not sustain a violation of constitutional magnitude because of such housing.  There is no constitutional requirement that a legitimate penological justification be made for a transfer to another prison, even where the conditions are more restrictive.  To the extent that

applicable regulations were not observed in the context of the transfers, non-compliance with those regulations does not establish a constitutional violation. Notwithstanding the lack of a specific explanation from Defendants, the existence of escalating gang-related violence which resulted in the death of a prisoner was adequate rationale for transferring a large group of prisoners from that facility. It is not for this court to second-guess the security measures taken by correctional officials; certainly violence of the sort occurring at MHCX warranted definitive action. To the extent that Plaintiff, a maximum security prisoner, was subjected to such restriction during this time of turmoil, he has failed to establish actual injury resulting from his temporary housing status at MCAC and NBCI [4]

The strip search to which Plaintiff was subjected also does not rise to the level of an atypical and significant hardship, even through it was video taped. Moreover, Defendants, supervisory personnel who did not participate in the search, are not vicariously liable for conduct of their employees because the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Nedd v. Correctional Medical Services*, Civil Action No. JFM-92-1524 (D.Md., October 22, 1992), *citing Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F.Supp. 986, 990 (E.D.Va. 1991). Even if the individual officers conducting the searches had been named as defendants, the claim fails. A defendant is entitled to avail himself of a qualified immunity defense when at the time of the claimed violation the right asserted was not clearly established and a reasonable person in the official's position would not have known that his conduct violated that right. *See Rish v. Johnson*, 131 F. 3d 1092, 1095 (4th Cir. 1997). The policy in place regarding strip searches clarifies that videotaping is only used to document pre-existing

_____

[4] Plaintiff indicates he and the other prisoners sent to NBCI were returned to MHCX (renamed Jessup Correction Institution, or "JCI") in December of 2006. Paper No. 9, Memorandum of Law at 2.

injuries and is not to include pictures of inmates' genitalia.  Paper No. 23 at Ex. 2, pp. 8– 9.   Strip

searches are a regular part of legitimate prison security.  Requiring plaintiffs to be strip searched as

part of the transfer was not outrageous conduct.  *See e.g., Fillmore v. Page*, 358 F. 3d 496, 505-6 (7th

Cir. 2004) (discrete and expeditious strip search not unconstitutional because it is videotaped). Thus,

even if the officers who conducted the search were defendants in this action, they would be entitled

to avail themselves of a qualified immunity defense.

Prisoners have a constitutionally protected right of access to the courts.  *See Bounds v. Smith*,

430 U. S. 817, 821 (1977).  However:

> *Bounds* does not guarantee inmates the wherewithal to transform
> themselves into litigating engines capable of filing everything from
> shareholder derivative actions to slip-and-fall claims.  The tools it
> requires to be provided are those that the inmates need in order to
> attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement.  Impairment of any
> other litigating capacity is simply one of the incidental (and perfectly
> constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

To the extent that Plaintiff was temporarily deprived of access to legal material, there has

been no showing of harm resulting from that deprivation.   "Ultimately, a prisoner wishing to

establish an unconstitutional burden on his right of access to the courts must show 'actual injury'

to 'the capability of bringing contemplated challenges to sentences or conditions of confinement

before the courts.'"  *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting Lewis*, 518 U.

S. at 355.  "The requirement that an inmate alleging a violation of  *Bounds*  must show actual injury

derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of

law from undertaking tasks assigned to the political branches."  *Lewis*, 518 U.S. at 349.  There has

been no allegation that a deadline was missed or Plaintiff was unable to pursue a meritorious claim.

The undisputed facts in this case establish no basis for a finding that Plaintiff's constitutional rights were abridged.  Defendants are entitled to summary judgment which shall be granted by separate order.


                                     _____/s/_____

                                       PETER J. MESSITTE

December 14, 2007                    UNITED STATES DISTRICT JUDGE